BRYAN, Judge.
M.W.H. (“the mother”) appeals from a judgment entered by the DeKalb Juvenile Court (“the juvenile court”) that denied her petition to modify custody of her son, C.J.W. (“the child”), in favor of R.W. (“the maternal grandfather”) and L.W. (“the maternal stepgrandmother”) (hereinafter referred to collectively as “the maternal grandparents”). We affirm.

Procedural History

The record indicates that, on July 19, 2006, the maternal grandparents, in case no. JU-06-283.01, filed a dependency petition in the juvenile court. In their petition, the maternal grandparents alleged that the child was dependent because the child’s father was unknown, the mother was manic depressive, and the mother was not able to provide a fit and proper home for the child. They further alleged that the mother was living in the maternal grandparents’ home with the child at the time the petition was filed, that the mother was planning to take the child to Illinois, that the home that the mother was going to take the child to in Illinois was not a fit and proper place for the child, and that to remove the child from the home of the maternal grandparents would mean that the child would be abandoned. The maternal grandparents sought temporary and permanent custody of the child. In August 2006, the juvenile court entered a default judgment awarding custody of the child to the maternal grandparents.
The mother subsequently filed a motion to set aside the default judgment. The record indicates that the parties appeared before the juvenile court for a hearing on September 19, 2006. On or about September 26, 2006, the juvenile court entered a judgment that set aside the default judgment and awarded the maternal grandparents custody of the child “after colloquy with the parties.” The mother was award *605 ed “reasonable visitation” with the child that was to be “generally supervised” by the maternal grandparents. There is no indication in the judgment that it was intended to be a temporary order that would allow the mother time to rehabilitate herself. No appeal was taken from that judgment.
Almost one year later, on August 16, 2007, in case no. JU-06-283.02, the maternal grandparents filed a petition in the juvenile court to modify the mother’s visitation rights with the child. They alleged that the mother was in an abusive relationship and that her visitation rights were due to be terminated. The maternal grandparents also requested an award of child support from the mother. On August 22, 2007, the mother filed an answer to the maternal grandparents’ petition and a counterclaim requesting sole legal and physical custody of the child. She alleged that there had been a material change in circumstances since the maternal grandparents were awarded custody of the child and that the child’s bests interests would be promoted by the change so as to overcome the inherent disruptive effect caused by the change in custody.
On June 28, 2008, the juvenile court entered a pendente lite order based on an agreement of the parties. Pursuant to that order, the maternal grandparents maintained custody of the child, the mother was ordered to pay $150 a month in child support, the mother was awarded specific visitation rights with the child, the mother was ordered to see a psychiatrist, and the mother and the maternal grandfather were ordered to attend family counseling.[1]
The juvenile court set the final hearing on the pending requests for relief for September 8, 2008. On September 9, 2008, the juvenile court entered an order that stated that the case had been called for trial but was not ready to be heard. The juvenile court rescheduled the final hearing for November 6, 2008, ordered the mother to schedule and complete a psychiatric evaluation before the final hearing, and left the mother’s visitation in place. On November 6, 2008, an order nearly identical to the September 9, 2008, order was entered and the juvenile court stated that “this matter shall come for hearing on motion of any party.”
Nothing further happened in the case until the mother’s attorney filed a motion to withdraw on February 9, 2010, stating that the case had been dormant since November 2008 and that he had had no contact with the mother since that time. On April 28, 2010, the mother filed a motion to set a final hearing and a renewed motion for custody of the child. She alleged that she had undergone treatment since the last hearing, that she had a stable home, that she had consistently paid child support to the maternal grandparents, and that there was no reason why she should not have custody of the child.
The juvenile court conducted an ore ten-us hearing on April 19, 2011. On June 9, 2011, the juvenile court issued a judgment stating that the custody-modification standard to be applied to the mother’s request for custody of the child was the custody-modification standard set forth in Ex parte McLendon, 455 So.2d 868 (Ala.1984). Without making any specific findings of fact, the juvenile court nevertheless found *606 that the child was dependent and awarded “primary care, custody, and control” of the child to the maternal grandparents. The juvenile court awarded the mother specific visitation with the child and ordered the mother to continue paying child support to the maternal grandparents.
Neither the mother nor the maternal grandparents filed a postjudgment motion challenging any part of the juvenile court’s judgment. On June 17, 2011, the mother filed a notice of appeal in case no. JU-06-283.02 to the DeKalb Circuit Court. The juvenile court subsequently certified the record as adequate for appeal, and the DeKalb Circuit Court transferred the mother’s appeal to this court.[2]

Issues

On appeal, the mother contends that the juvenile court did not have subject-matter jurisdiction to decide her custody-modification petition and that, if the juvenile court did have subject-matter jurisdiction, the juvenile court erred by applying the McLendon standard to her request for custody of the child.

Discussion

Initially, we note that the issues presented on appeal by the mother are questions of law. “Accordingly, this court will review the juvenile court’s judgment de novo, without giving any presumption of correctness to the juvenile court’s legal conclusions.” J.W. v. C.B., 68 So.3d 878, 879 (Ala.Civ.App.2011).
The mother first argues that the juvenile court did not have subject-matter jurisdiction over her request for custody of the child in case no. JU-06-283.02 because, she says, the juvenile court lacked subject-matter jurisdiction over the dependency action initiated by the maternal grandparents in 2006, i.e., case no. JU-06-283.01. She argues that (1) the maternal grandparents’ original dependency petition was not filed with a juvenile intake officer, see former § 12-15-50, Ala.Code 1975; (2) that the allegations of dependency in the initial dependency petition were insufficient to invoke the jurisdiction of the juvenile court; and (3) that the juvenile did not find the child dependent or the mother unfit in the September 2006 judgment awarding custody of the child to the maternal grandparents.[3]
It is clear from our review of the September 2006 judgment that it was entered after an agreement of the parties because the award of custody to the maternal grandparents was made after only a colloquy with the parties. Moreover, there is nothing in the September 2006 judgment to indicate that the judgment was not final — there was no further review scheduled and no claims left unadjudicated. As we noted above, there was no appeal taken from that judgment. Although this court does not usually entertain collateral attacks on judgments that are final and have not been appealed, see Morgan v. Lauderdale Cnty. Dep’t of Pensions & Sec., 494 So.2d 649, 651 (Ala.Civ.App.1986), we will consider the mother’s arguments because they implicate the juvenile court’s continuing subject-matter jurisdiction to determine the mother’s request for custody of the child. See former § 12-15-32, Ala. Code 1975 (setting forth the juvenile court’s continuing jurisdiction before January 1, 2009).
*607 Regarding the first part of her argument, even if we assume that the maternal grandparents’ dependency petition was not filed by a juvenile intake officer, we cannot conclude that the juvenile court did not obtain jurisdiction to consider the dependency petition on that basis. The record reveals that the maternal grandparents filed a verified dependency petition that included affidavits from the maternal grandfather and the maternal stepgrand-mother. In W.T.H. v. 915 So.2d 64, 71-72 (Ala.Civ.App.2005), in which it was undisputed that the dependency petition in that case had not been signed or filed by a juvenile intake officer, this court held that there was “no procedural irregularity” and that the juvenile court’s dependency judgment was not void or otherwise due to be reversed because the dependency petition had been verified by the petitioning party and the dependency petition had been delivered to and filed with the clerk of the juvenile court. Accordingly, we find no merit in the first part of the mother’s argument.
We also disagree with the mother’s contention that the allegations in the initial dependency petition were insufficient to invoke the dependency jurisdiction of the juvenile court. The maternal grandparents’ July 2006 dependency petition specifically alleged that the child was dependent, and it also alleged specific facts that, if proven to be true, could show that the child was dependent. See J.W. v. N.K.M., 999 So.2d 526, 532-38 (Ala.Civ.App.2008) (concluding that the factual allegations in the dependency petition, coupled with the specific allegations that the child was dependent and that the child’s best interests would be served by awarding the petitioner custody of the child, were sufficient to invoke the jurisdiction of the juvenile court). Furthermore, in Ex parte L.E.O., 61 So.3d 1042, 1047 (Ala.2010), our supreme court held that, when determining whether a child is in need of care or supervision pursuant to the definition of dependency, a juvenile court “must consider whether the child is receiving adequate care and supervision from those persons legally obligated to care for and/or supervise the child.” The record indicates that, although the maternal grandparents had been providing care for the child while the child lived in their home, the maternal grandparents were not legally obligated to do so. Accordingly, we conclude that the dependency petition filed by the maternal grandparents invoked the dependency jurisdiction of the juvenile court.
The mother also argues that the juvenile court did not have jurisdiction because it did not expressly find that the child was dependent in the September 2006 judgment that awarded custody of the child to the maternal grandparents. “[Tjhis court has held that when the evidence in the record supports a finding of dependency and when the trial court has made a disposition consistent with a finding of dependency, in the interest of judicial economy this court may hold that a finding of dependency is implicit in the trial court’s judgment.” J.P. v. S.S., 989 So.2d 591, 598 (Ala.Civ.App.2008). As we stated above, it is evident that the September 2006 judgment was entered based on an agreement of the parties. Because the mother agreed to allow the maternal grandparents to have custody of the child in response to the maternal grandparents’ pending dependency petition, we conclude that the mother agreed that she was unable to provide proper care and support for the child, i.e., that the child was dependent.[4] See former § 12-15-1(10), Ala. *608 Code 1975 (defining a dependent child). Accordingly, we conclude that the juvenile court implicitly found that the child was dependent in the September 2006 judgment and, pursuant to that implicit finding, awarded custody of the child to the maternal grandparents. Accordingly, we conclude that the juvenile court had continuing subject-matter jurisdiction to consider the mother’s custody-modification petition initially filed in August 2007. See former § 12-15-32(a) (“For purposes of this chapter, jurisdiction obtained by the juvenile court in any case of a child shall be retained by it until the child becomes 21 years of age unless terminated prior thereto by order of the judge of the juvenile court....”).
To the extent that the mother, in her brief on appeal, challenges the sufficiency of the evidence to support an implicit finding of dependency in the juvenile court’s September 2006 judgment, we will not consider that argument because the time for making such an argument has long passed. See Morgan, 494 So.2d at 651.
At the start of the ore tenus hearing, the mother argued that the juvenile court could make a custody determination regarding the child only if there was a finding that the child was dependent. Therefore, she argued, the entire case should be dismissed and custody of the child returned to the mother because there was no indication that the child had ever been declared dependent by the juvenile court. The attorney for the maternal grandparents responded by arguing that an implicit finding of dependency had been made in the September 2006 judgment based on the pleadings before the court and the colloquy that led to the September 2006 judgment. In the June 2011 judgment, after it held that the McLendon standard applied to the mother’s petition for custody of the child, the juvenile court found the child dependent. At first glance, those two findings appear to render the juvenile court’s judgment internally inconsistent because the McLendon standard does not apply in the dispositional phase of a dependency proceeding. See T.B. v. T.H., 30 So.3d 429, 432 (Ala.Civ.App.2009) (a finding that the McLendon standard had been met is inconsistent with a disposition under the dependency statute, which is governed by the “best interests” standard). However, the McLendon standard does apply to a petition to modify an award of “permanent” custody that was made pursuant to a finding that the child was dependent. See P.A. v. L.S., 78 So.3d 979, 981 (Ala.Civ.App.2011) (“When a juvenile court has entered a judgment awarding custody of a dependent child to a relative, a parent seeking to modify that custody must meet the McLendon standard in order to regain custody of the child.”).
This court must construe the juvenile court’s judgment, if possible, in a manner that would uphold the validity of the judgment. See Ex parte Snider, 929 So.2d 447, 457 (Ala.2005) (quoting Clark v. Board of Dental Exam’rs of Georgia, 240 Ga. 289, 294, 240 S.E.2d 250, 254 (1977), quoting in *609 turn Byrd v. Goodman, 195 Ga. 621, 621, 25 S.E.2d 34, 35 (1943) (Syllabus by the Court)) (“1 “When a judgment is susceptible of two meanings, one of which would render it illegal and the other proper, that construction will, if reasonably possible, be given it that would render it legal.” ’ ”). Considering the arguments presented to the juvenile court at the start of the ore tenus hearing, and considering that the same juvenile-court judge presided over the original dependency proceeding and the mother’s custody-modification proceeding, we construe the juvenile court’s judgment as holding that the child had been found dependent in the September 2006 judgment, that the McLendon standard applied to the mother’s custody-modification petition, and that the mother failed to meet her burden of proof.
We agree with the mother’s contention in her brief on appeal that the underlying action was handled as a custody case, not a dependency case. Thus, we reject any implication in the juvenile court’s June 2011 judgment that the child was dependent at the time that that judgment was entered. The only petitions pending before the juvenile court at the time of trial were the mother’s request for custody of the child and the maternal grandparents’ requests for an award of child support and for termination of the mother’s visitation with the child.[5]
Finally, the mother argues that the juvenile court erred by concluding that the McLendon standard applied to her request for custody of the child because there had not been a final judgment declaring the child dependent or finding her unfit. However, we have already concluded that the September 2006 judgment contained an implicit finding of dependency and that it was a final judgment. We agree with the mother’s contention that there were several pendente lite orders entered in 2007 and 2008 related to the mother’s request for custody and that those pendente lite orders did not alter the applicable custody-modification standard. See Sims v. Sims, 515 So.2d 1, 2-3 (Ala.Civ.App.1987). However, she further argues that the parental presumption set forth in Ex parte Terry, 494 So.2d 628 (Ala.1986), should have been applied. This court has, many times, rejected such an argument.
“Ex parte Terry confirms long-standing Alabama law that a fit natural parent has a presumptive right to the custody of his or her child as against a nonparent. 494 So.2d at 632. According to Ex parte McLendon, supra, that right persists until either the parent voluntarily forfeits custody of the child or a judgment awards custody of the child to a nonparent. 455 So.2d at 865. In such cases, a parent cannot regain custody merely by proving his or her biological connection to, and fitness to raise, the child, but also must show that the change in custody would so materially promote the best interests of the child that the positive good brought about from the change of custody would more than offset the disruptive effects caused by uprooting the child. Id. at 865-66.”
R.W. v. D.S., 85 So.3d 1005, 1007 (Ala.Civ.App.2011) (emphasis added). See also P.A. v. L.S., 78 So.3d at 981 (after the child was found dependent and custody of the child was awarded to a relative, this court held that the McLendon standard applied to a subsequent custody-modification action filed by a parent); J.W. v. C.B., *610 56 So.3d 693, 699 (Ala.Civ.App.2010) (same); and M.B. v. S.B., 12 So.3d 1217, 1218-20 (Ala.Civ.App.2009) (when the dependency of the mother’s children was adjudicated after a stipulation by the parties, the McLendon standard applied to the mother’s subsequent request for custody of the children). Accordingly, we conclude that the juvenile court properly applied the McLendon standard to the mother’s custody-modification petition.
The mother does not challenge the sufficiency of the evidence to support the juvenile court’s judgment denying her request for custody of the child based on the application of the McLendon standard; thus, that issue is waived. See Ex parte Riley, 464 So.2d 92, 94 (Ala.1985).
Based on the arguments presented by the mother on appeal, the judgment of the juvenile court is affirmed.
AFFIRMED.
THOMPSON, P. J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. The order also stated that "the ex parte protection order executed on August 16, 2007, and all addendums thereto in case number DR-2007 — 414 are hereby revoked and held for naught.” Apparently, case no. DR-2007-414 is a related action involving the same parties. No issues relating to a judgment or order in case no. DR-2007-414 have been raised by the parties in this appeal.

. Apparently, the appeal to the DeKalb Circuit Court was assigned case no. CV-11-92.

. We note that the mother's custody-modification proceeding was initiated in the juvenile court before January 1, 2009. Accordingly, the Alabama Juvenile Justice Act, as it existed before January 1, 2009, applies in this case. See former § 12-15-1 et seq., Ala.Code 1975.

. This conclusion should not be read as holding that a parent stipulates that their child is *608 dependent anytime the parent agrees to allow a nonparent to have temporary custody of their child. This conclusion is limited to cases such as this one, i.e., cases in which there is a pending dependency petition filed by a nonparent that alleges that the child in question does not have a parent able or willing to provide care or support for the child. In such a case, a juvenile court would have jurisdiction to make a custodial disposition of the child only if the child was dependent. See K.C.G. v. S.J.R., 46 So.3d 499, 501-02 (Ala.Civ.App.2010) (a juvenile court has jurisdiction to make a custodial disposition of a child in a dependency proceeding only if the juvenile court determines that the child is dependent).

. The record indicates that the maternal grandparents’ requests for relief were resolved by an agreement of the parties.