Rel: January 31, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024

_____

## CL-2023-0286

_____

## M.C.A.

### v.

## Etowah County Department of Human Resources and O.P.

### Appeal from Etowah Juvenile Court
### (JU-21-9.01)

_____

## CL-2023-0287

_____

## M.C.A.

### v.

## Etowah County Department of Human Resources and O.P.

**Appeal from Etowah Juvenile Court**
**(JU-21-10.01)**

PER CURIAM.

This is the second time these parties have been before this court.

Two children, E.V.A., a daughter, and E.C.A., a son ("the children"), were born of the marriage of O.P. ("the mother") and M.C.A. ("the father"). The mother also has a daughter ("the stepdaughter") who was born as a result of a previous relationship of the mother's and who lived in the home with the mother, the father, and the children.

The record indicates that in April 2019 the Calhoun County Department of Human Resources ("the Calhoun County DHR") investigated allegations that the father had sexually abused the stepdaughter. A Calhoun County DHR social worker explained that because the family had not cooperated with the investigation and no further information could be gathered, the Calhoun County DHR had taken no action. No criminal charges were filed in Calhoun County with regard to the father's alleged abuse of the stepdaughter.

Regardless, in May 2019, the mother filed an action in the Calhoun Circuit Court in which she sought a divorce from the father. On January

20, 2020, the Calhoun Circuit Court entered a judgment divorcing the mother and the father. That divorce judgment purports to award the mother and the father joint custody of the children. However, the terms of the divorce judgment pertaining to custodial periods with the children state that the mother and the father will agree to custodial periods but that, if they cannot agree, the father is awarded visitation with the children from Thursday to Sunday on alternating weeks and overnight every Friday. Thus, the divorce judgment awards the mother sole custody of the children, affords the father periods of visitation with the children, and awards the mother and the father joint legal custody of the children. See § 30-3-151, Ala. Code 1975; Whitehead v. Whitehead, 214 So. 3d 367, 371 (Ala. Civ. App. 2016).

In July 2020, the Etowah County Department of Human Resources ("DHR") received a report of inadequate shelter for the children at the father's home; the children were visiting the father when DHR received that report. During the course of investigating that inadequate-shelter report, DHR social workers learned of the allegations of sexual abuse of the stepdaughter by the father. DHR filed actions requesting that the Etowah Juvenile court ("the juvenile court") find the children and the

3

stepdaughter dependent and sought an award of custody of all three children. Only the actions pertaining to the children are at issue in these appeals.

After conducting a dependency hearing at which it received ore tenus evidence, the juvenile court entered judgments on February 11, 2021, in which it found the children dependent and awarded custody of them to DHR pending a dispositional hearing. We note that DHR had placed the children in the mother's home. The father appealed, and this court affirmed the February 11, 2021, judgments, without an opinion. See M.C.A. v. Etowah Cnty. Dep't of Hum. Res., 357 So. 3d 656 (Ala. Civ. App. 2021). The father filed petitions for the writ of certiorari to the Alabama Supreme Court, which denied those petitions. See Ex parte M.C.A., 357 So. 3d 657 (Ala. 2021). On December 20, 2021, this court issued its certificates of judgment in M.C.A. v. Etowah County Department of Human Resources, supra.

On January 25, 2022, DHR filed in the juvenile court motions requesting that custody of the children be returned to the mother. The juvenile court conducted a hearing over the course of two days at which it received ore tenus evidence on DHR's motions. On April 5, 2023, the

4

juvenile court entered a judgment in each of the actions in which it awarded custody of the children to the mother, awarded the father supervised visitation with the children, and terminated DHR's involvement in the matters. The father filed a postjudgment motion in each action, which were denied by operation of law. See Rule 59.1, Ala. R. Civ. P.; and Rule 4(a)(1), Ala. R. App. P. The father timely appealed both judgments. This court consolidated the appeals.

The father argues in his appellate brief that the juvenile court was without authority to award custody of the children to the mother and award him supervised visitation with the children. The father relies, in part, on portions of the Alabama Juvenile Justice Act ("the AJJA"), § 12-15-101 et seq., Ala. Code 1975, which provides, in part, that "[a] juvenile court shall exercise exclusive original jurisdiction of juvenile court proceedings in which a child is alleged ... to be dependent ...." § 12-15-114(a), Ala. Code 1975. See § 12-15-102(8), Ala. Code 1975 (defining the term "dependent child"). A "dependent child" is defined as

"[a] child who has been adjudicated dependent by a juvenile court and is in need of care or supervision and meets any of the following circumstances:

"1. Whose parent, legal guardian, legal custodian, or other custodian subjects the child or

5

any other child in the household to abuse, as defined in Section 12-15-301[, Ala. Code 1975,] or neglect as defined in Section 12-15-301, or allows the child to be so subjected.

"2. Who is without a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child.

"3. Whose parent, legal guardian, legal custodian, or other custodian neglects or refuses, when able to do so or when the service is offered without charge, to provide or allow medical, surgical, or other care necessary for the health or well-being of the child.

"4. Whose parent, legal guardian, legal custodian, or other custodian fails, refuses, or neglects to send the child to school in accordance with the terms of the compulsory school attendance laws of this state.

"5. Whose parent, legal guardian, legal custodian, or other custodian has abandoned the child, as defined in subdivision (1) of Section 12-15-301.

"6. Whose parent, legal guardian, legal custodian, or other custodian is unable or unwilling to discharge his or her responsibilities to and for the child.

"7. Who has been placed for care or adoption in violation of the law.

"8. Who, for any other cause, is in need of the care and protection of the state."

§ 12-15-102(8)a.

Initially, DHR alleged that the children were dependent because of the father's alleged sexual abuse of the stepdaughter, which invoked the juvenile court's subject-matter jurisdiction. The AJJA also specifies that if a juvenile court finds a child dependent, it may immediately "make proper disposition of the case" or may make a custodial disposition of the child at a later, dispositional hearing. § 12-15-311(a), Ala. Code 1975; see also Rule 25(A), Ala. R. Juv. P. ("At any adjudicatory hearing in a … dependency … case …, the juvenile court may proceed immediately to a dispositional hearing after adjudication or may set a dispositional hearing for a later date."). In its February 11, 2021, judgments, the juvenile court found the children dependent, awarded pendente lite custody of the children to DHR, and scheduled the matter for a future hearing. Thus, because the February 11, 2021, judgments did not dispose of the dependency actions, those judgments were adjudicatory and not dispositional.

In 2022, when DHR asked the juvenile court to return custody of the children to the mother, DHR took the position that the mother was a fit parent and capable of properly caring for the children; it contended,

however, that the children were dependent as to the father. The juvenile court scheduled the matters for a dispositional hearing pursuant to § 12-15-311.

Under the AJJA, a juvenile court may make a custodial disposition, or a custodial award, of a child only if that child is found to be dependent at the time it enters the dispositional judgment. § 12-15-311(a); see also § 12-15-314(a) ("If a child is found to be dependent, the juvenile court may make any of the following orders of disposition to protect the welfare of the child ….). Although a juvenile court may find a child dependent at the time of an adjudicatory hearing, if a dispositional hearing is conducted on another date, the child must be determined to be dependent at the time of the entry of the dispositional judgment in order for the juvenile court to have jurisdiction to enter that judgment. See H.A.S. v. S.F., 298 So. 3d 1092, 1102 (Ala. Civ. App. 2019); J.P. v. D.P., 260 So. 3d 862, 871 (Ala. Civ. App. 2018). This court has explained:

> "'Juvenile courts are purely creatures of statute and have extremely limited jurisdiction. See Ex parte K.L.P., 868 So. 2d 454, 456 (Ala. Civ. App. 2003). That limited jurisdiction allows a juvenile court to make a disposition of a child in a dependency proceeding only after finding the child dependent. V.W. v. G.W., 990 So. 2d 414, 417 (Ala. Civ. App. 2008) (quoting K.B. v. Cleburne County

> > Dep't of Human Res., 897 So. 2d 379, 389 (Ala. Civ. App. 2004) (Murdock, J., concurring in the result)) (" '[I]n order to make a disposition of a child in the context of a dependency proceeding, the child must in fact be dependent at the time of that disposition.' ").'
>
> "T.B. v. T.H., 30 So. 3d 429, 431 (Ala. Civ. App. 2009) (some emphasis added)."

M.D. v. S.C., 150 So. 3d 210, 212 (Ala. Civ. App. 2014). The AJJA allows a juvenile court to award custody of a dependent child to a parent. See § 12-15-314(a)(1).

The father argues on appeal that because it was undisputed that the mother was a fit parent for the children at the time of the disposition of the children, the children could not be found to be dependent at that time. For that reason, he says, the juvenile court was without jurisdiction to enter a custodial disposition of the children. See § 12-15-311(a); § 12-15-314(a); H.A.S. v. S.F., supra; and J.P. v. D.P., supra.

In Ex parte L.E.O., 61 So. 3d 1042 (Ala. 2010), petitioners who were unrelated to the child at issue in that case, but with whom the child had lived for three years with the permission of the child's mother, filed a petition seeking to have the child found dependent and seeking an award of custody of the child. The child's father, who had not seen the child in

9

more than three years, opposed the petition. He contended that the mother had prevented him from visiting the child. However, the father admitted that he had not sought court intervention in locating the child and had not made any financial contribution to the support of the child. The juvenile court in that case entered a judgment finding that the child was not dependent under former § 12-15-1(10), Ala. Code 1975 (now amended and renumbered as § 12-15-102(8)a.), which defined the term "dependent child" and was applicable to that action. The petitioners appealed, and this court affirmed the juvenile court's judgment, without an opinion. See L.E.O. v. A.L., 61 So. 3d 1041 (Ala. Civ. App. 2009). On certiorari review, our supreme court reversed, holding that the evidence clearly established that the father had abandoned the child and, therefore, that the child was dependent. Ex parte L.E.O., supra.

In its opinion in Ex parte L.E.O., supra, our supreme court explained that former § 12-15-1(10) provided that a child was dependent if he or she met one of a list of factors and, with regard to those factors, was "in need of care or supervision." 61 So. 3d at 1047. See also § 12-15-102(8)a. (A "dependent child" is one "who has been adjudicated dependent by a juvenile court and is in need of care or supervision and meets any of

the following circumstances ...."). The supreme court stated that, in considering whether a child is "in need of care or supervision" under former § 12-15-1(10), and now § 12-15-102(8)a., "the juvenile court must consider whether the child is receiving adequate care and supervision from those persons legally obligated to care for and/or to supervise the child." Ex parte L.E.O., 61 So. 3d at 1047. In that case, the supreme court concluded that the child was dependent because, instead of providing the child care and supervision, the father had "simply assumed" that the child was receiving adequate care and support, had "made no effort to determine who was meeting the child's needs," and had "abdicated his responsibility to contribute to the financial support of the child." Ex parte L.E.O., 61 So. 3d at 1049-50.

The father in this case points out in his appellate brief that this court recently held that a child who has a fit custodial parent who is capable of protecting the child may not be determined to be dependent because of the conduct of the noncustodial parent that might otherwise render the child dependent. See E.D. v. Lee Cnty. Dep't of Hum. Res., 266 So. 3d 740, 744 (Ala. Civ. App. 2018). The father, relying on Ex parte E.D., supra, argues that, regardless of his conduct, the children could not

11

be dependent because the mother could properly care for and supervise them.

In <u>Ex parte E.D.</u>, supra, the mother and the father in that case shared joint custody of their child at the time the Lee County Department of Human Resources ("the Lee County DHR") sought to have the child declared dependent as to the father. The Lee County DHR made no allegation that the child was dependent as to the mother. The mother had filed in the Lee Juvenile Court an action seeking to modify a previous custody judgment that had awarded the parents joint custody, and she also sought and obtained a protection-from-abuse ("PFA") order prohibiting the father from visiting the child. <u>Ex parte E.D.</u>, 266 So. 3d at 741-42. After a hearing, the Lee Juvenile Court entered a judgment finding the child dependent only as to the father and awarding the mother custody of the child.

On appeal in that case, this court discussed the holding in <u>Ex parte L.E.O.</u>, supra, and concluded that "[t]here is no evidence demonstrating that the child's care or supervision is inadequate. The mother, a person legally obligated to care for and to supervise the child, has the authority to take appropriate actions on behalf of the child, and she has done so."

Ex parte E.D., 266 So. 3d at 744. This court reversed the juvenile court's judgment, holding that because the mother, as a joint custodian, was a fit custodial parent capable of acting to protect the child, the child could not be found to be dependent under the AJJA. See Ex parte E.D., 266 So. 3d at 746 ("[B]ecause the child has a custodial parent able to properly care for and supervise him, the child is not a dependent child."). We note, however, that this court qualified its holding by explaining:

> "This opinion should not be read as holding that a child with joint custodians, only one of whom has been allegedly harming the child, can never be declared dependent. If an otherwise fit joint custodian fails to adequately protect a child from the harm of another joint custodian, the child may be adjudicated dependent and subjected to state protective services under Ex parte L.E.O., [61 So. 3d 1042 (Ala. 2010)]."

Id.

Thus, in Ex parte E.D., supra, this court held that, generally, if a joint custodian has failed to "properly care for and supervise" a child, but the child's other joint custodian is capable of providing the child that proper care, protection, and supervision, the child is not dependent. 266 So. 3d at 746. We have reconsidered the holding of Ex parte E.D., supra, however, and we conclude that it does not comport with the supreme court's holding in Ex parte L.E.O., supra. In Ex parte L.E.O., our supreme

13

court held that a child is dependent if he or she does not receive "adequate care and supervision from <u>those persons</u> legally obligated to care for and/or to supervise the child." 61 So. 3d at 1047 (some emphasis omitted). "Persons" is a plural form of the word "person." In declaring that a child is dependent if "those persons" legally obligated to provide care and supervision for the child fail to do so, our supreme court referred to both of the child's joint custodians. In other words, under the holding of <u>Ex parte L.E.O.</u>, supra, even if a child has a fit joint custodian, that child can still be "in need of care or supervision" with regard to the child's other joint custodian, and, therefore, the child can be a dependent child. To the extent that <u>Ex parte E.D.</u>, supra, fails to follow our supreme court's holding in <u>Ex parte L.E.O.</u>, supra, we overrule <u>Ex parte E.D.</u>, supra.

Under § 12-15-314 and <u>Ex parte L.E.O.</u>, supra, the juvenile court had jurisdiction to award custody of the children to the mother, a fit custodian, if the father's conduct would render the children dependent as to the father. Rule 25(A), Ala. R. Juv. P., and § 12-15-310(b), Ala. Code 1975, specify that, in dependency actions, a juvenile court must make a written finding in its judgments regarding whether a child is dependent. Although it noted that the children had been determined to be dependent

14

in the February 11, 2021, judgments, the juvenile court in this case failed to make such a finding in its April 5, 2023, judgments. However, numerous cases have held that, under certain circumstances, a finding of dependency may be determined to be implicit in a juvenile court's judgment. T.E. v. Calhoun Cnty. Dep't of Hum. Res., 344 So. 3d 895, 899 (Ala. Civ. App. 2021); H.C. v. S.L., 251 So. 3d 793, 794 (Ala. Civ. App. 2017); M.W.H. v. R.W., 100 So. 3d 603, 607 (Ala. Civ. App. 2012); L.L.M. v. S.F., 919 So. 2d 307, 311 (Ala. Civ. App. 2005); O.L.D. v. J.C., 769 So. 2d 299 (Ala. Civ. App. 1999). If the evidence "clearly supports a dependency determination" in a case in which the judgment contains no express finding of dependency, such a finding may be held to have been implicit in the judgment. H.C. v. S.L., 251 So. 3d at 794. "[A]lthough a finding of the continued dependency of a child may indeed be implicit in a judgment redisposing of that child's custody, the evidence of record supporting dependency must so '"clearly support[] a dependency determination"' that no fact-finding is necessary." T.E. v. Calhoun Cnty. Dep't of Hum. Res., 344 So. 3d at 899. See also O.L.D. v. J.C., 769 So. 2d at 302 ("In the interest of judicial economy and because the record supports a finding of dependency, we will not remand this case to the

15

trial court for a dependency hearing."). Accordingly, we look to the record to determine whether a finding of dependency may be implicit in the juvenile court's April 5, 2023, judgments. See T.E. v. Calhoun Cnty. Dep't of Hum. Res., supra; O.L.D. v. J.C., supra.

The record shows that in 2020 DHR found the father "indicated" for the "sexual molestation" of his stepdaughter for actions he took when the stepdaughter was a young teenager. Those actions included purchasing lingerie for the stepdaughter and forcing her to model it for him, encouraging the stepdaughter to allow him to take suggestive photographs of the stepdaughter in a vehicle, requesting that the stepdaughter sleep in his bed on a night when the two were alone, and touching the stepdaughter inappropriately. In response to DHR's 2020 investigation into those incidents, the father did not dispute that he had taken those actions. Instead, the father attempted to excuse his improper conduct toward the stepdaughter by stating that he had been "testing" her to see how she would react if a teenaged boy had exhibited similarly inappropriate conduct toward her. The record indicates that, based on its investigation, DHR determined that the father constituted a threat not

16

only to the stepdaughter, but also to the two children at issue because of his sexual abuse of the stepdaughter.

The vast majority of the evidence presented at the dispositional hearing pertained to DHR's 2020 investigation of the sexual-abuse allegations against the father. However, DHR also presented some evidence during the dispositional hearing that raises additional concerns about the father's conduct pertaining to the children. Dannika Edgar, a DHR social worker, testified that, in 2020, when DHR initially restricted the father's visitation with the children pursuant to a safety plan, the father expressed interest in visiting only with his daughter, who was then approximately seven years old. According to Edgar, the father was uninterested in visiting with his son, who was then one year old.

In addition, evidence was presented indicating that, after the juvenile court entered its February 11, 2021, dependency judgments, which awarded the father supervised visitation with the children, the father visited the children twice in approximately two years. Edgar testified that the father had exercised one of those supervised visitations in February 2021 and the other in the spring of 2022, shortly after the first day of testimony in the dispositional hearing. Edgar explained that

17

the father had said that he would prefer not to visit the children at all rather than exercise supervised visitation with them. Edgar stated that, between those two visits, the father had not contacted DHR to inquire about the welfare of the children. Amanda Cook, another DHR social worker, testified that, near the end of 2022, the father had had some other visits with the children that were supervised by the father's sister. The record does not indicate how many visits the father's sister might have supervised. However, before the end of 2022, the father's sister refused to be a visitation supervisor for the father. Cook testified that she did not know the reason for that refusal. The juvenile court noted in its judgments that it had entered an order on December 8, 2022, directing the mother and the father to contact a services provider who would supervise the father's visitation. However, the juvenile court stated that there was no indication that either parent had contacted that services provider. At the time of the second day of testimony in the dispositional hearing, which occurred on April 5, 2023, the father had not visited the children since November 2022.

During the pendency of the mother's and the father's divorce action, the mother had obtained a PFA order against the father; it is not clear

18

whether that PFA order also encompassed protection for the children. Regardless, the PFA order expired before the entry of the divorce judgment and was no longer in effect. DHR presented no evidence regarding whether the mother has sought another PFA order in any court or whether she has filed a petition in the Calhoun Circuit Court seeking to modify the father's visitation under the divorce judgment in a manner that would protect the children from the possibility of abuse.

Under § 12-15-102(8)a.8., a child is dependent if he or she has been adjudicated dependent, "is in need of care and supervision," and, "for any other cause, is in need of the care and protection of the state." Unlike the mother in Ex parte E.D., supra, the mother in this case does not have in place a PFA order that prevents the father from visiting the children. In Ex parte E.D., supra, the mother had filed a petition seeking to modify the custody judgment between her and the father, and that petition had been served on the father at the jail at which the father was incarcerated at the time of the dispositional hearing. Ex parte E.D., 266 So. 3d at 741-72 and 742 n.3. In the absence of the proper exercise of dependency jurisdiction by the juvenile court, the issue of the father's contact with the children would be governed by the divorce judgment, pursuant to

19

which, it appears, the father would be allowed unsupervised overnight contact with the children. The father's litigation strategy in these cases appears to be to seek reinstatement of unsupervised contact between himself and the children pursuant to that divorce judgment.

The record contains evidence indicating that the father sexually abused the stepdaughter when she was a young teenager and that the children are approaching the age at which that abuse began. The juvenile court, like DHR, could reasonably be skeptical of the father's explanation for that sexual abuse and find his explanation to be inappropriate. The father participated in no services or evaluations that might lead to the conclusion that the father could and would behave appropriately with the children. Also, with only limited exceptions, the father refused to visit the children during the pendency of these actions because the juvenile court required that those visitations be supervised for the children's protection. At the time of the second day of testimony in the dispositional hearing, that refusal had resulted in his having had no contact with the children for approximately four or five months. That evidence calls into question the father's intent with regard to the children and demonstrates that his priority is not the safety, protection, or best interests of the children.

Therefore, we conclude that the evidence demonstrates that the children are in need of care and supervision and the protection of the state. § 12-15-102(8)a.8. Accordingly, we conclude that a determination that the children were dependent is implicit in the juvenile court's April 5, 2023, judgments. M.W.H. v. R.W., 100 So. 3d 603, 607 (Ala. Civ. App. 2012) ("'[T]his court has held that when the evidence in the record supports a finding of dependency and when the trial court has made a disposition consistent with a finding of dependency, in the interest of judicial economy this court may hold that a finding of dependency is implicit in the trial court's judgment.'" (quoting J.P. v. S.S., 989 So. 2d 591, 598 (Ala. Civ. App. 2008))); L.L.M. v. S.F., 919 So. 2d 307, 311 (Ala. Civ. App. 2005) ("Given the factual findings contained in the ... judgment, we conclude that a finding of dependency was implicit in the trial court's judgment."). Given the dependency finding implicit in the juvenile court's April 5, 2023, judgments, we hold that the juvenile court had jurisdiction to enter its April 5, 2023, dependency judgments in these cases. K.A.B. v. J.D.B., 279 So. 3d 607, 616 (Ala. Civ. App. 2018); M.W.H. v. R.W., 100 So. 3d at 608. We also reject the father's argument that the children could not be

found to be dependent based on the mother's ability to properly care and supervise them. Ex parte L.E.O., supra.

The father does not argue on appeal that the evidence pertaining to his conduct does not support the implicit dependency determination. Therefore, that issue is waived. See Boshell v. Keith, 418 So. 2d 89, 92 (Ala. 1982) ("When an appellant fails to argue an issue in its brief, that issue is waived.").

For the foregoing reasons, we affirm the juvenile court's judgments.

CL-2023-0286 -- AFFIRMED.

CL-2023-0287 -- AFFIRMED.

Thompson, P.J., and Moore, Hanson, and Fridy, JJ., concur.

Edwards, J., concurs in the result, without opinion.