THOMAS, Judge.
A.M.W. appeals from a judgment of the MobileJuvenile Court (“the juvenile court”) finding that A.G.W. (“the child”) is not dependent. We reverse the judgment and remand the eause.
A.M.W. and A.M. (“the mother”) were never married; however, it is undisputed that at the time of the child’s birth the mother had Represented to A.M.W. that he was child’s father. AM.W. was present for the child’s birth on October 30, 2009, and his name appears on the child’s birth certificate. The events leading up to the present action are not entirely clear from the appellate record. However, the record indicates that the mother was involved in a automobile accident in June 2012 that rendered her severely mentally and physically impaired and that the mother’s mother, *76 C.M. (“the grandmother”), had been appointed as the mother’s guardian by the Mobile Probate Court (“the probate court”). The record also indicates that the grandmother had filed a petition in the probate court on November 2, 2012, seeking to be appointed as the child’s guardian. A.M.W. filed an objection to that petition on November 6, 2012, and asserted that he had filed a petition for guardianship and conservatorship of the child in the juvenile court and that the child was in his physical custody. The petition filed by A.M.W. is not included in the record; however, based upon assertions made by A.M.W. in his appellate brief and at the trial, it appears that he had filed a petition for custody of the child in the juvenile court (“the custody petition”). The probate court dismissed the grandmother’s petition regarding the child on August 29, 2013.
Although it is undisputed that the child went to live with A.M.W. in October 2012, there is disagreement regarding the circumstances surrounding the child’s placement with A.M.W. The grandmother testified that the child was not returned from a weekend visitation with A.M.W.; A.M.W. testified that the grandmother had voluntarily relinquished custody of the child.[1] However, A.M.W. admits that DNA testing ultimately revealed that he is not the child’s biological father. A.M.W. filed a petition in the juvenile court on September 5, 2014, alleging that the child was dependent because the mother was unable to care for the child and that the child’s father was unknown. A hearing was held on September 15, 2014, after which the juvenile court entered an order that stated, in part, that “[t]he court took testimony and determined that the life, health and safety of the child was not at risk if returned to the mother. However, the court determined that the Mobile County [Department of Human Resources] should have protective supervision pending the trial date, December 2, 2014.” The record indicates that the child resumed living with the mother, who was living with the grandmother and her husband (“the stepgrand-father”).
A trial was held on December 2, 2014; the juvenile court entered a judgment on March 13, 2015. The juvenile court’s judgment states that, after listening to testimony, the juvenile court found that the child is not dependent, and it dismissed the dependency petition. K.C.G. v. S.J.R., 46 So.3d 499, 501-02 (Ala.Civ.App.2010)(“If a juvenile court determines that the child is not dependent, the court must dismiss the dependency petition.”). A.M.W. filed a notice of appeal to this court on March 26, 2015. In his brief on appeal, A.M.W. challenges whether the child should have been found dependent, whether the mother had legal capacity to delegate the care of the child to the grandmother and stepgrandfa-ther, and whether he should have been awarded custody of the child.
Section 12-15-102(8)a., Ala.Code 1975, defines a dependent child to include a child who “is in need of care or supervision” and “[w]ho is without a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child,” § 12-15-102(8)a.2., or “[w]hose parent, legal guardian, legal custodian, or other custodian is unable or unwilling to discharge his or her responsibilities to and for the child.” § 12-15-102(8)a.6. In the present case, it is undisputed that the mother is unable to care for the child; it is also undisputed that the child’s father is unknown.
*77 The juvenile court heard ore ten-us evidence regarding dependency; therefore, its judgment is accorded a strong presumption of correctness.
“A finding of dependency must be supported by clear and convincing evidence. § 12 — 16—65(f)[, Ala.Code 1975];[2] M.M.S. v. D.W., 735 So.2d 1230, 1233 (Ala.Civ.App.1999). However, matters of dependency are within the sound discretion of the trial court, and a trial court’s ruling on a dependency action in which evidence is presented ore tenus will not be reversed absent a showing that the ruling was plainly and palpably wrong. R.G. v. Calhoun County Dep’t of Human Res., 716 So.2d 219 (Ala.Civ.App.1998); G.C. v. G.D., 712 So.2d 1091 (Ala.Civ.App.1997); and J.M. v. State Dep’t of Human Res., 686 So.2d 1253 (Ala.Civ.App.1996).”
J.S.M. v. P.J., 902 So.2d 89, 95 (Ala.Civ.App.2004). It is undisputed that the mother is incapable of caring for herself, much less the child. Included in the record is a document from the mother’s doctor, dated November 7, 2012, that states that “[t]he [mother] is currently wheelchair bound and is dependent on others for her daily living requirements. She is able to speak a few words. Recoveiy period and the extent of her recovery are undetermined at, this time.” .Also included in the record is a report from Brenda Pierce, who was appointed as a court representative by the probate court, dated January 2, 2013, that states, in pertinent part, that “[the mother] has severe-physical limitations and cognitive deficits as the result of her brain injury. She needs a guardian to make medical decisions and will need a Conservator to pursue any cause of action stemming from the automobile accident.” Further, a December 2, 2014, report prepared by the Mobile County Department of Human Resources and submitted to the juvenile court includes the following description of the mother:
“[The mother] was involved in a car accident on June 22, 2012, where she suffered a brain injury, leaving her left side paralyzed and [léaving the mother] unable to care for herself or her daughter. . [The mother] has been through physical therapy. At this- time her mother, [the grandmother], helps her at home with physical therapy. Since then [the mother] has progressed to being able to move her left arm up and down and her left leg. She has retained some of her motor skills and memorization. She is still in the progress of learning new and old things. She has progressed since worker has been involved with the family. She is able to work a computer and write her name. She can speak but at times it is not understandable.”
Although the mother appeared at the trial and was represented by an attorney, it is clear from the transcript that the mother ■ either did not' comprehend the questions directed to her or was unable to communicate a responsive answer. The grandmother testified that the mother had made progress since she had sustained her injuries;- but the' grandmother further testified that she still had to make decisions for the mother and that she did not foresee a significant change in the mother’s need for a guardian in the near future.
We find Ex parte L.E.O., 61 So.3d 1042 (Ala.2010), instructive in the present case. In Ex parte L.E.O., the mother in that case had left the child in the care of custodians for a significant period and the father had failed to pursue visitation or to provide support for the child for over three years. Id. at 1050. Our supreme court, interpreting former § 12-15-1(10), Ala. *78 Code 1975, which was later amended and •renumbered as § 12-15-102(8)a., determined that the child had been abandoned by his parents and was, therefore, dependent. Id. Ultimately, o.ur supreme court held that a child who has “been abandoned by both persons legally obligated to care for and/or to supervise him [or her]” is dependent as defined by statute.Id.[3]
Although there are no documents in the record from the proceeding commenced by A.M.W. by the filing of the custody petition, we have surmised from the record that either A.M.W. abandoned that custody claim after DNA testing revealed that he was not the child’s biological father[4] or that the action was dismissed by the juvenile court. Regardless, after discovering that he was not the child’s biological father, A.M.W. next sought custody of the child through the dependency petition.
We are, of course, aware that “ ‘[i]t is our duty to affirm the trial court’s judgment if it is fairly supported by credible evidence, “regardless of our own view of that evidence or whether we would have reached a different result had we been the trial judge.” ’ ” L.R.M. v. D.M., 962 So.2d 864, 873-74 (Ala.Civ.App.2007)(quoting Griggs v. Griggs, 638 So.2d 916, 918-19 (Ala.Civ.App.1994) (quoting in turn Young v. Young, 376 So.2d 737, 739 (Ala.Civ.App.1979))). However, based upon the facts before us, we conclude that, like the child in Ex parte L.E.O., who had been abandoned by both his parents, the child in this case was.«without a parent, a legal guardian, or a legal custodian to provide for her care or who was able to discharge his or her parental responsibilities. As such, the child is dependent as defined by § .12-15-102(8)a.2. & 6.
The judgment of the juvenile court is therefore reversed, and' the cause is remanded with instructions for the juvenile court to make a finding of dépendency and an award of custody.[5] Because we find this issue to be dispositive, we pretermit discussion of A.M.W.’s remaining issues.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing. ' . .

. A.M.W. also asserts that he had been awarded “temporary custody” of the child at some point; there is no documentation of a previous award of custody included in the record before us.

2. This requirement is now codified' at § 12-15-311(a), Ala.Code 1975.

.Justice Murdock observed in his dissent in Ex parte L.E.O. the potential for jurisdictional conflict between juvenile courts and probate courts, a conflict that could have arisen in the present case. See 61 So.3d at 1057 n. 7 (Murdock, J., dissenting). As noted by Justice Murdock, a probate court is authorized pursuant to § 26-2A-75(a), Ala.Code 1975, to appoint a guardian for a minor at the request of the “minor or any person interested in the wélfare of the minor.” See id. In the case before us, the grandmother petitioned the probate court to be appointed the guardian of the child; the probate court would have acted within its discretion by granting the grandmother’s petition and making the appointment. However, A.M.W. objected to the grandmother’s petition and asserted to the probate court that he was the child’s biological father, that the child was in his physical custody, and .that he had initiated a proceeding regarding the child in the juvenile court. Based on the information before it, the probate court acted reasonably by dismissing the grandmother’s petition so that the matter could proceed in the juvenile, court.

. Although it appears that A.M.W. could have been deemed the presumed father of the child as defined by § 26-17-204(a)(5), Ala.Code 1975, he did no.t raise that argument to the juvenile court or to this court on appeal.

. We do not express an opinion regarding the appropriate party to be awarded custody of the child.