Rel: April 26, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024

_____

### CL-2023-0616

_____

### J.L.

### v.

### D.G.H., S.L.H., and Ja.L.

### Appeal from Etowah Juvenile Court
### (JU-20-357.01)

PER CURIAM.

J.L. ("the father") appeals from a judgment entered by the Etowah Juvenile Court ("the juvenile court") finding E.D.L. ("the child") dependent and awarding custody of the child to S.L.H. ("the maternal grandmother") and D.G.H. ("the maternal grandfather").

Procedural Background

The father married Ja.L. ("the mother") on September 25, 2009. The father and the mother were divorced by a judgment entered by the

Etowah Circuit Court on October 22, 2010, while the mother was pregnant with the child. The divorce judgment, which ratified and incorporated a settlement agreement entered between the father and the mother, provided that the father and the mother would exercise joint legal custody of the child; that the mother would exercise sole physical custody of the child, subject to the father's reasonable visitation rights; and that the father would pay $492 per month in support for the child.

The child was born on January 4, 2011. Pursuant to the divorce judgment, the mother maintained sole physical custody of the child, with the father visiting the child every other weekend. Over time, the mother voluntarily allowed the maternal grandparents to exercise custody of the child during her custodial periods. On November 27, 2018, the Etowah Circuit Court modified the divorce judgment to award the father and the mother joint custody of the child and to require the father and the mother to exchange physical custody of the child on an alternating weekly basis. Despite the entry of the modification judgment, the mother did not exercise her custodial rights; the father alternated weekly custody of the child with the maternal grandparents. After the summer of 2019, the

father agreed to allow the child to reside with the maternal grandparents and to visit with him every other weekend.

In September 2020, following reports that the mother and her paramour had abused or neglected N.H. ("the child's half-sibling"), the mother's other child, who was born in 2017, the Etowah County Department of Human Resources ("DHR") implemented a safety plan to protect the child. Believing that DHR would remove the child from their home and place the child with the father, on October 21, 2020, the maternal grandparents filed a dependency petition in the juvenile court, and they obtained pendente lite custody of the child based on an ex parte order. On December 4, 2020, the father filed an answer denying the material allegations of the dependency petition and a counterclaim seeking custody of the child; he also filed a motion for pendente lite visitation with the child. The juvenile court granted the father's motion for pendente lite visitation on January 11, 2021, allowing the father unsupervised visitation with the child every other weekend.

On February 15, 2022, the juvenile court approved an agreement between the father, the mother, and the maternal grandparents and entered a pendente lite order incorporating that agreement. The

3

pendente lite order, among other things, awarded the father and the maternal grandparents joint legal custody of the child and joint physical custody of the child "on a week on, week off basis"; required the father and the maternal grandparents to ensure that the child, who was being treated for symptoms associated with attention-deficit/hyperactivity disorder ("ADHD"), took all his prescribed medications; and awarded the mother visitation with the child to be supervised by the maternal grandmother.

On January 12, 2023, the juvenile court commenced the trial of the case, which was eventually completed on April 4, 2023. On August 2, 2023, the juvenile court entered a final judgment finding the child to be dependent and awarding sole custody of the child to the maternal grandparents, subject to specified visitation being awarded to the mother and the father. The final judgment provides, in pertinent part:

> "The ... child has resided primarily with the [maternal grandparents] since 2015 and has formed an extremely strong bond with [the maternal grandparents]. Testimony and evidence was presented that between 2015-2022, the father would visit the child every other weekend. That the mother and father voluntarily allowed the ... child to reside with the [maternal grandparents]. That the [maternal grandparents] have been the primary contact with the child's school since he has been in school. The child is now in 6th grade. That in February 2022, on a temporary basis, the [maternal

4

grandparents] and [the] father alternated week to week [custody of] the minor child.

"That the ... child suffers from ADHD and is currently prescribed medications to help control his ADHD. That there was testimony and evidence presented wherein the father fails and/or refuses to give the ... child his medication when in the father's physical custody. There was testimony and evidence presented that as a result of the father's failure to administer the child's medication, the ... child has had behavioral issues at school during the time he was in the father's physical custody.

"There was testimony and evidence presented that during the time the child was alternating week to week with the [maternal grandparents] and the father, the ... child's mental and emotional health declined. That the ... child's licensed therapist, Erica Sewell, testified that it was her professional opinion that the ... child's emotional and mental health was concerning and it was her opinion it was as a result of the parties' week on week off custodial periods along with the father's failure to provide for the child's mental health needs."[1]

---

[1]The juvenile court did not cite the mother's alleged abuse and neglect as a factor in its dependency determination. The mother testified that she had extricated herself from her abusive relationship with her paramour and that she had adjusted her circumstances to meet the needs of the child. The juvenile court evidently did not base its dependency determination on the mother's past abusive and neglectful misconduct. See D.O. v. Calhoun Cnty. Dep't of Hum. Res., 859 So. 2d 439, 444 (Ala. Civ. App. 2003) (holding that the dependency of a child must be based on current circumstances).

On August 10, 2023, the father filed a timely postjudgment motion to alter, amend, or vacate the final judgment, which was denied on August 22, 2023. The father timely appealed to this court on September 5, 2023.

Issues

In his brief on appeal, the father asserts that

"[t]he stated grounds relied upon [by] the [juvenile] court to support its finding of dependency was based upon the fact that the parents voluntarily allowed the child to live with the maternal grandparents and that the father allegedly failed and/or refused to give the child his ADHD medication when in the father's physical custody. ... However, pursuant to Ala. Code [1975,] § 12-15-102(8)[,] and established legal precedent, these facts do not constitute a sufficient basis for the juvenile court's determination of dependency ...."

The father's brief, p.17. The father contends that, although the mother may have abandoned the child, he did not abandon the child or commit any other abuse or neglect contributing to the dependency of the child. The father maintains that he should not be legally responsible for the mother's actions or omissions, in effect maintaining that the juvenile court erred in finding the child dependent as to him.

Analysis

The father's argument proceeds from a faulty premise. Under Alabama law, "dependency" refers to the status of a child who is "in

6

need of care or supervision" because the child is not receiving adequate care or supervision "from those persons legally obligated to care for and/or to supervise the child." Ex parte L.E.O., 61 So. 3d 1042, 1047 (Ala. 2010) (emphasis in original). When the parents are joint custodians of a child, both sharing equal legal responsibilities to provide adequate care and supervision for the child, the failure or refusal of one of the parents to properly discharge those responsibilities renders the child dependent. See M.C.A. v. Etowah Cnty. Dep't of Hum. Res., [Ms. CL-2023-0286, Jan. 31, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024). As a matter of Alabama law, a child can be deemed dependent even when one parent is fit, willing, and able to care for the child. See T.K. v. M.G., 82 So. 3d 1, 4 (Ala. Civ. App. 2011), overruled on other grounds by Ex parte T.M., 358 So. 3d 1155 (Ala. Civ. App. 2022).

In this case, the mother gained sole custody of the child in the divorce judgment. At first, the mother and the child resided with the maternal grandparents, and the mother jointly cared for the child with the maternal grandmother during her custodial periods. When the child was two years old, the mother and the child moved out of the

maternal grandparents' home, but she heavily relied on the maternal grandparents to babysit the child, leaving the child with them for increasing periods. Eventually, the mother decided to leave the child with the maternal grandparents fulltime so that he could attend an elementary school in the district in which they lived. The mother testified that, when she left the child with the maternal grandparents, she had intended for the child to be raised by them in her stead. The mother visited with the child occasionally, but she did not provide routine financial or emotional support for the child or perform regular parental duties; instead, she left the maternal grandparents to meet the child's basic needs without her involvement. In 2018, the mother agreed to a modification of the divorce judgment, pursuant to which she was awarded joint legal and joint physical custody of the child with the father. The mother, however, never exercised her custodial rights; rather, she informally delegated those rights to the maternal grandparents.

A "dependent child" includes a child who "is in need of care or supervision" and "[w]hose parent, legal guardian, legal custodian, or other custodian has abandoned the child, as defined in subdivision (1)

8

of [Ala. Code 1975, §] 12-15-301." Ala. Code 1975, § 12-15-102(8)a.5.

Section 12-15-301(1), Ala. Code 1975, defines "abandonment" as:

> "A voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his or her presence, care, love, protection, maintenance, or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent."

Based on the undisputed evidence in the record, the mother abandoned the child as a matter of law by voluntarily and intentionally relinquishing her custody rights to the maternal grandparents. Her abandonment left the child "in need of care or supervision," as our supreme court construed that phrase in Ex parte L.E.O., because she was not personally providing the child with care and supervision as required by the divorce judgment and the 2018 modification judgment. Thus, the child was dependent, regardless of whether the father's conduct also contributed to the dependency of the child.

We need not delve into whether the father's acquiescence in allowing the child to reside with the maternal grandparents can be treated as a voluntary and intentional relinquishment of his custodial rights, cf. Ragsdale v. Ragsdale, 991 So. 2d 770 (Ala. Civ. App. 2008) (holding that father in that case, who had exercised his visitation and

9

had paid child support, did not voluntarily forfeit his rights to child by allowing grandparents to exercise mother's custodial rights), or whether his failure to consistently provide the child with medication for his ADHD-like symptoms independently rendered the child dependent, cf. In re Jahzir Barbee M., 171 A.D.3d 1181, 1183, 99 N.Y.S.3d 91, 93 (N.Y. App. Div. 2019) (reversing a finding that a child was neglected because the evidence indicating that the mother had "delayed in scheduling an independent neuropsychological evaluation of the child, and that the child missed some doses of Adderall while he was staying at his father's home" was insufficient to prove medical neglect).  Because the child was dependent based on the abandonment of the child by the mother, the dependency adjudication must be affirmed.

The father insinuates that the juvenile court should have at least returned the child to his joint custody as set forth in the modification judgment.  Even in cases in which a juvenile court finds that only one parent's conduct led to the dependency of the child, the Alabama Juvenile Justice Act ("the AJJA"), Ala. Code 1975, § 12-15-101 et seq., does not specifically require that the other parent receive custody rights to the child.  The AJJA gives priority to "a willing, fit, and able relative ... over

10

a non-relative," but the term "relative" does not include a parent, see Ala. Code 1975, § 12-15-301(14) (defining "relative" to include "only a brother, sister, uncle, aunt, first cousin, grandparent, great grandparent, great-aunt, great-uncle, great great grandparent, niece, nephew, grandniece, grandnephew, or a stepparent"). Furthermore, "[i]n the dispositional phase of a dependency proceeding … the father of a child does not have any presumptive right to custody of his child as against more distant relatives." D.W. v. M.M., 272 So. 3d 1107, 1112 (Ala. Civ. App. 2018). The AJJA authorizes a juvenile court to "[m]ake any [custodial] order as the juvenile court in its discretion shall deem to be for the welfare and best interests of the child." Ala. Code 1975, § 12-15-314(a)(4).

In this case, the juvenile court determined that it would be in the best interests of the child for the maternal grandparents to obtain sole custody and for the father to visit with the child every other weekend as had been the custodial arrangement for most of the child's life. We review the custodial disposition of a dependent child by a juvenile court solely to determine whether the juvenile court abused its discretion. See Ex parte Alabama Dep't of Hum. Res., 682 So. 2d 459 (Ala. 1996). We cannot say based on this record that any abuse of discretion has occurred. The

11

maternal grandparents have long provided the child satisfactory care as his primary caregivers, and the juvenile court concluded that the father was not as capable as the maternal grandparents of meeting the emotional and mental-health needs of the child. The evidence is sufficient to sustain a finding that it is in the best interests of the child that he be placed in the sole custody of the maternal grandparents.

<u>Conclusion</u>

Based on the foregoing, we affirm the judgment of the juvenile court finding the child dependent and awarding sole custody of the child to the maternal grandparents.

AFFIRMED.

Hanson and Fridy, JJ., concur.

Moore, P.J., concurs specially, with opinion, which Edwards and Lewis, JJ., join.

MOORE, Presiding Judge, concurring specially.

In Ex parte L.E.O., 61 So. 3d 1042 (Ala. 2010), the supreme court determined that a child was "in need of care or supervision" within the definition of "dependent child" in Ala. Code 1975, § 12-15-102(8), when the child has been abandoned by his or her parents and left in the custody of persons without legal custodial rights to the child. In his dissent to the main opinion in Ex parte L.E.O., Justice Murdock predicted that the supreme court's decision would disrupt longstanding law recognizing that a parent has a "natural and constitutionally protected right" to delegate custody of his or her child to a grandparent. 61 So. 3d at 1050 (Murdock, J., dissenting). Justice Murdock reasoned that a child should not be treated as a dependent child when a parent prudently places the child with a grandparent who provides the child with adequate care and supervision. 61 So. 3d at 1052-55. I agreed with Justice Murdock's dissent then, see L.E.O. v. A.L., 61 So. 3d 1058, 1065 n.2 (Ala. Civ. App. 2010) (Moore, J., concurring specially) (opinion after remand), and G.H. v. Cleburne Cnty. Dep't of Hum. Res., 62 So. 3d 540, 546 (Ala. Civ. App. 2010) (Moore, J., concurring in the result), and, seeing the fallout from that opinion, I agree with it even more now.

13

Ja.L. ("the mother") may have abandoned E.D.L. ("the child"), but she did not leave the child without proper care and supervision when she placed him in the care of the maternal grandparents. From the time the child was born, the maternal grandparents have exhibited nothing but love for the child. In addition to unwavering emotional support, they have consistently provided the child with adequate protection, food, shelter, clothing, medical care, educational care, and psychological care. When the mother determined that she could not or would not be able to parent the child, she made a prudent decision to delegate custody of the child to the maternal grandparents, knowing that they had the means and devotion to raise the child properly alongside the father. Her decision did not leave the child in a dependent state, requiring the intervention of the state to assure that the basic needs of the child were being satisfied.

It is the public policy of this state to encourage extended families to work together to provide for the safety and welfare of children. See K.C. v. D.C., 891 So. 2d 346, 350 (Ala. Civ. App. 2004). Accordingly, the law generally favors amicable custody arrangements between parents and grandparents that inure to the benefit of a child. See M.D.K. v. V.M., 647

So. 2d 764, 765 (Ala. Civ. App. 1994). A child being raised, either wholly or in part, by a grandparent who provides the child adequate care and supervision should not be considered a dependent child. See J.W. v. N.K.M., 999 So. 2d 526, 540-44 (Ala. Civ. App. 2008) (Moore, J., dissenting). And a parent should not have to risk a child being declared dependent by exercising his or her fundamental right to delegate the care of the child to a grandparent. In appropriate circumstances, a parent may voluntarily forfeit his or her custodial rights to a grandparent, see, e.g., R.K. v. R.J., 843 So. 2d 774, 786 (Ala. Civ. App. 2002), but, as Justice Murdock recognized in his dissent in Ex parte L.E.O., that does not render a child dependent when the grandparent acts in loco parentis by assuming the parental role and providing the appropriate care that the child needs. 61 So. 3d at 1057 (Murdock, J., dissenting).

However, in Ex parte L.E.O., the supreme court decided that, when "those persons legally obligated to care for and/or to supervise the child" do not fulfill their obligations, the child is "in need of care or supervision." 61 So. 3d at 1047. As Justice Murdock pointed out in his dissent, that means that, when a parent has abandoned his or her child and is no longer personally providing the child with care and supervision, the child

15

is automatically dependent regardless of whether the child has been placed in the loving and proper care of fit grandparents. 61 So. 3d at 1057 (Murdock, J., dissenting). Pursuant to Ex parte L.E.O., in this case, the child could be adjudicated to be a "dependent child" within the meaning of Ala. Code 1975, § 12-15-102(8), not because he was actually "in need of care or supervision" but because he was artificially "in need of care or supervision" by the supreme court's definition.

Moreover, Ex parte L.E.O., as interpreted by this court, mandates that a child be adjudicated dependent even if one of two joint custodial parents can properly provide the child with care and supervision. See M.C.A. v. Etowah Cnty. Dep't of Hum. Res., [Ms. CL-2023-0286, Jan. 31, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024). Alabama now follows "the one-parent doctrine," pursuant to which a juvenile court may find a child dependent based on the acts or omissions of one parent even if the other parent remains fit and willing to properly parent the child. See Vivek S. Sankaran, Parens Patriae Run Amuck: The Child Welfare System's Disregard for the Constitutional Rights of Nonoffending Parents, 82 Temp. L. Rev. 55, 70-77 (2009) (providing that a majority of the states consider a child dependent when one custodial parent cannot or will not

properly care for his or her child regardless of the nonoffending conduct of the other parent).  Under the one-parent doctrine, a juvenile court may find a child dependent based on the acts or omissions of one custodial parent and, unless a statute provides otherwise, award custody of the child without affording the other parent any presumptive right to custody of the child.  See In re Sanders, 495 Mich. 394, 852 N.W.2d 524 (2014). As the main opinion concludes, pursuant to § 12-15-314, the juvenile court could properly award the custody of the child to the maternal grandparents without regard for any parental presumption favoring the father.

In In re Sanders, the Michigan Supreme Court held that the one-parent doctrine "essentially imposes joint and several liability on both parents, potentially divesting either of custody, on the basis of the unfitness of one." 495 Mich. at 401, 852 N.W.2d at 527.  The court determined in that case that, when a juvenile court does deprive a "nonoffending" parent of custody of a child based purely on its own notions of the best interests of a child, a juvenile court violates the due process of that parent.  The court reasoned that a fit parent has a fundamental right to the custody of his or her child that does not

17

evaporate because the other parent has become unfit to care for the child thereby rendering the child dependent. Thus, the court said, a juvenile court should be required to apply a presumption in favor of awarding custody to the nonoffending parent and a juvenile court may decline to award custody to that parent only when the presumption has been rebutted by clear and convincing evidence. The reasoning in In re Sanders suggests that § 12-15-314 may be unconstitutional as applied to a nonoffending parent.

That problem could be alleviated if the maternal grandparents' claim could have been treated as a pure custody claim. Alabama law affords a natural parent such a presumptive right to custody in third-party custody disputes. See Ex parte Terry, 494 So. 2d 628 (Ala. 1986). However, as Justice Murdock also explained in his dissent, by redefining the phrase "in need of care or supervision" as it did, the main opinion in Ex parte L.E.O. "blur[s], indeed largely remove[s], the line between true dependency cases ... and mere third-party custody cases." 61 So. 3d at 1055 (Murdock, J., dissenting). According to Justice Murdock:

> "Under the new rule announced today in the main opinion, it now will be impossible to distinguish a [third-party custody] case from a dependency case. Thus, a grandparent who has been caring for a child for several years because a parent or

18

> the parents have placed the child with the grandparent to raise, will now have to file a dependency proceeding in the juvenile court, rather than a custody proceeding in the circuit court, in order to obtain a custody award to be able to enroll the child in school."

61 So. 3d at 1056 (emphasis added). The decision in Ex parte L.E.O. forces grandparents into juvenile court by transforming a third-party custody dispute into a dependency case when the voluntary relinquishment of a child has been alleged. See R.J. v. J.N.M.W., 339 So. 3d 935, 840 (Ala. Civ. App. 2021).

Unfortunately, many Alabama children are dependent because they need the care and supervision of the state. The limited jurisdiction of the juvenile court should not be misdirected away from those children toward resolving custody disputes between parents and grandparents over a child who is receiving adequate care and supervision. Alabama's appellate courts should do everything in their power to mark a clear line between dependency cases and third-party custody cases instead of blurring and eradicating that distinction to enlarge the jurisdiction of juvenile courts. I maintain that Ex parte L.E.O. was wrongly decided and should be overruled by the supreme court. If not, the Alabama legislature should consider rewriting the dependency laws to rectify the

problems created by that opinion. In the meantime, the Court of Civil

Appeals is constrained to follow the holding in <u>Ex parte L.E.O.</u>, <u>see</u> Ala.

Code 1975, § 12-3-16, so I am compelled to concur with the main opinion.

Edwards and Lewis, JJ., concur.