Rel: August 1, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2025

_____

### CL-2025-0036

_____

### N.S.

v.

### B.K.M. and S.M.

### Appeal from Jackson Juvenile Court
### (JU-23-383.01)

MOORE, Presiding Judge.

N.S. ("the putative father") appeals from a judgment entered by the

Jackson Juvenile Court ("the juvenile court") terminating his parental

rights to a child, who was born on October 16, 2023, and was, at times

throughout the proceedings below, referred to as "Baby Boy" ("the child"). We dismiss the appeal.

<u>Procedural History</u>

The relevant procedural history is as follows. On October 17, 2023, the putative father commenced an action in the juvenile court by filing a petition alleging that the child was dependent because, he asserted, J.P. ("the mother") was "attempting to have the … child adopted by not allowing the [putative] father to sign the birth certificate." On December 5, 2023, B.K.M. and S.M. ("the intervenors") filed a motion to intervene in the action as defendants; they asserted, among other things, that the mother had agreed to allow them to adopt the child and that the child had remained in their care since his birth. The intervenors also filed an answer asserting that the putative father's petition was due to be denied and requesting that the juvenile court allow them to pursue adoption proceedings in the Montgomery Probate Court. On that same date, the juvenile court entered an order granting the motion to intervene. On January 10, 2024, the putative father filed a motion requesting an adjudication of his paternity of the child and a motion requesting visitation with the child. On January 11, 2024, the juvenile court entered

an order adjudicating the putative father as the child's legal and biological father.

On May 17, 2024, the juvenile court entered an order that states, in pertinent part:

> "This case obviously presents some very difficult and unusual facts, as the [child] was put up for adoption by the mother, without the [putative] father's consent. The [intervenors] have filed a petition for adoption in their home county, Montgomery. The [putative] father has filed his notice of contest in that matter. Obviously[,] the [intervenors] will have to terminate the [putative] father's parental rights at some point in [j]uvenile [c]ourt, if they are to proceed with the adoption. In order to accomplish the termination, [the intervenors] must prove the child is dependent as to the biological parents or have them relinquish their rights. It is highly unlikely the [putative] father is going to relinquish his rights. So dependency is at issue in this case and this court is of the opinion it has jurisdiction to hear these proceedings.

> "After consideration of the testimony, evidence presented, court pleadings and submitted case law, it is ORDERED as follows:

> "1. This court believes it is the court of original jurisdiction and therefore, will continue to hear this matter until a final order is issued."

The juvenile court awarded the putative father visitation with the child and set the matter for a final adjudicatory hearing "on the issue of dependency and any and all other matters that are pending at that time on September 24, 2024."

On June 26, 2024, the intervenors filed in the same action a verified petition to terminate the parental rights of the mother and of the putative father. On September 24, 2024, the juvenile court conducted a bench trial. On December 31, 2024, the juvenile court entered a judgment in which it, among other things, found the child to be "a dependent child as to the [putative] father," granted the intervenors' petition to terminate the parental rights of the putative father, and awarded legal and physical custody of the child to the intervenors. On January 9, 2025, the putative father filed a notice of appeal to this court.

On June 4, 2025, this court entered an order requesting letter briefs from the parties as to whether the October 17, 2023, petition filed by the putative father had invoked the jurisdiction of the juvenile court. Both sides filed letter briefs in response to this court's order. After considering the record and the letter briefs, this court determines that the putative father's petition did not invoke the jurisdiction of the juvenile court and that, thus, its proceedings were void.

## Discussion

In K.L. v. M.W., 394 So. 3d 596, 599 (Ala. Civ. App. 2024), this court stated, in pertinent part:

4

"The requirements for the form and content of a dependency petition are set forth in § 12-15-121, Ala. Code 1975, which provides, in pertinent part:

"'(a) A juvenile petition alleging delinquency, in need of supervision, or dependency may be signed by any person 18 years of age or older, other than a juvenile court intake officer, who has knowledge of the facts alleged or is informed of them and believes that they are true. However, the person signing a dependency petition, in the petition or in an attached affidavit, shall give information, if reasonably ascertainable, as required in [§] 30-3B-209[, Ala. Code 1975].

"'....

"'(c) The petition shall set forth with specificity ... the following:

"'(1) The facts which bring the child under the jurisdiction of the juvenile court, the facts constituting the alleged dependency, delinquency, or need of supervision and the facts showing that the child is in need of supervision, treatment, rehabilitation, care, or the protection of the state, as the case may be.'

"A petition that will invoke the dependency jurisdiction of a juvenile court is one that 'avers facts that, if proven to be true, would establish the dependency of the child under § 12-15-102(8), [Ala. Code 1975,] regardless of the particular language pleaded.' R.J. v. J.N.M.W., 339 So. 3d [935,] 938 [(Ala. Civ. App. 2021)]. See also Ex parte L.E.O., 61 So. 3d 1042, 1047 n.4 (Ala. 2010)."

In the October 17, 2023, petition, the putative father asserted only that he was the putative father of the child and that the child was dependent because the mother had placed the child for adoption after not allowing him to sign the child's birth certificate. Section 12-15-102(8)a., Ala. Code 1975, defines a "dependent child" as, among other things:

> "A child who has been adjudicated dependent by a juvenile court and is in need of care or supervision and ...:
>
> > "....
> >
> > "7. Who has been placed for care or adoption in violation of the law."

However, by alleging that he, as a putative father, had been denied the opportunity to sign the child's birth certificate, the putative father did not assert the fact that the child had been placed for adoption in violation of the law.

A "putative father" is an alleged or reputed biological father of a child. See Ala. Code 1975, § 26-17-102(19). A "putative father" differs from a "presumed father," who is recognized by operation of law under Ala. Code 1975, § 26-17-204, as the legal father of a child. See § 26-17-102(17). A man becomes the presumed father of a child when, among other things, the child is born during his marriage to the mother or when

6

the man was married to the mother within 300 days of the birth of the child. See § 26-17-204(a)(1) through (4). By alleging that he was only a "putative father" of the child, the father admitted that he was not married to the mother at the time of the birth of the child or within 300 days thereof so as to qualify as a "presumed father."

The putative father has not pointed to any statute or other law giving a putative father the legal right to sign a birth certificate. Section 22-9A-7(f)(2), Ala. Code 1975, provides:

> "If the mother was not married at the time of either conception or birth or between conception and birth, the name of the father shall not be entered on the certificate [of birth] unless paternity has been determined by a court of competent jurisdiction or unless the legitimation process specified in [§§] 26-11-1 through 26-11-3[, Ala. Code 1975], inclusive, or otherwise provided by law has been completed."

By its plain language, § 22-9A-7(f)(2) indicates that, when an unmarried woman gives birth to a child, the name of a putative father, a man whose paternity has not been judicially determined or established by operation of law, shall not be entered on the birth certificate of the child.[1] On the

---

[1]Pursuant to Ala. Code 1975, § 26-17-301, a putative father may become an acknowledged father by filing an acknowledgment of paternity voluntarily executed by him and the mother. Under Ala. Code 1975, § 26-17-315(c), "an affidavit of paternity completed in accordance with this section shall be accepted by the Office of Vital Statistics for purposes of

other hand, if the woman is married at the time of the conception or the birth of the child, or between the conception and the birth of the child, "the name of the husband shall be entered on the certificate as the father of the child, unless it is established by law that he is not the father of the child." § 22-9A-7(f)(1). In either event, a putative father has no legal right to sign the birth certificate without the consent of the birth mother unless and until his paternity has been judicially established. But see note 1, supra. Accordingly, in this case, the putative father's allegations in his petition that the mother was attempting to have the child adopted without allowing him to sign the birth certificate did not invoke § 12-15-102(8)a.7. because the child was not placed for adoption "in violation of the law" regulating birth certificates.

The putative father failed to assert any other facts showing that the child was placed for adoption in violation of the former Alabama Adoption Code, Ala. Code 1975, former § 26-10A-1 et seq., which was applicable at the time the putative father filed his petition. He also failed to aver any additional facts regarding the child's alleged dependency. Thus, the

_____

listing the father's name on the child's birth certificate." It is not a violation of the law for an unmarried woman to refuse to execute a voluntary acknowledgment of paternity.

putative father's petition contains no allegations or assertions that, if proven true, would show that the child was dependent at the time the petition was filed in the juvenile court. Accordingly, the petition did not invoke the dependency jurisdiction of the juvenile court.

The petition could be construed as a challenge to the adoption of the child. Section 12-15-115(a)(4), Ala. Code 1975, gives juvenile courts jurisdiction over "[p]roceedings for the adoption of a child <u>when these proceedings have been transferred from probate court as provided by law</u>." (Emphasis added.) At the time of the filing of the October 17, 2023, petition, the former Alabama Adoption Code contained various provisions authorizing a probate court in which an adoption petition had been filed to transfer an adoption proceeding to a juvenile court, <u>see</u> <u>Ex parte A.M.P.</u>, 997 So. 2d 1008 (Ala. 2008), including a provision allowing the transfer of a contest to an adoption. <u>See</u> Ala. Code 1975, former § 26-10A-24. However, in the absence of a valid transfer order from an appropriate probate court, a juvenile court cannot exercise original jurisdiction over an adoption proceeding. <u>See</u> <u>Ex parte C.L.C.</u>, 897 So. 2d 234, 237 (Ala. 2004). The record shows that the putative father did not obtain a valid transfer order from the Montgomery Probate Court; he

directly filed his petition, which would be construed as a challenge to the adoption, in the juvenile court. To the extent that the juvenile court reasoned in its May 17, 2024, order that it could exercise jurisdiction over the case to facilitate the adoption of the child, the juvenile court erred because it had no original jurisdiction over the adoption contest, which remained in the Montgomery Probate Court. Thus, the October 17, 2023, petition did not invoke the jurisdiction of the juvenile court under § 12-15-115(a)(4).

On January 10, 2024, the putative father filed a motion requesting an adjudication of his paternity of the child and a motion requesting visitation with the child. Treating that motion as, in substance, an amendment to the October 17, 2023, petition to assert a claim of paternity and visitation, see, generally, D.T. v. W.G., 210 So. 3d 1143, 1147 (Ala. Civ. App. 2016) (discussing the distinction between a motion and a pleading), the purported amendment does not affect our jurisdictional analysis. Although juvenile courts generally have original jurisdiction over parentage actions, see Ala. Code 1975, § 12-15-115(a)(6), in this instance, the juvenile court could not exercise that jurisdiction. This court has held that, if the original petition did not invoke the

subject-matter jurisdiction of the juvenile court, all later proceedings are void, including any amendment to the petition, which is considered a legal nullity. See G.W.K. v. B.W.M., 387 So. 3d 1126, 1130 (Ala. Civ. App. 2023). Thus, the purported amendment to the petition was invalid and the order adjudicating the paternity of the child and awarding the putative father visitation was void ab initio for lack of subject-matter jurisdiction.

For a similar reason, the juvenile court never acquired subject-matter jurisdiction over the intervenors' petition to terminate the putative father's parental rights to the child. Juvenile courts have exclusive original jurisdiction over petitions to terminate parental rights. See Ala. Code 1975, § 12-15-114(c)(2). In this case, however, the intervenors filed their petition in the underlying action as a counterclaim to the petition filed by the putative father, which, we have concluded, did not invoke the jurisdiction of the juvenile court. "[W]hen a court fails to initially obtain subject-matter jurisdiction, it does not obtain jurisdiction over a subsequently filed counterclaim." Holt v. Holt, 319 So. 3d 1281, 1284 (Ala. 2020). Because the juvenile court did not acquire jurisdiction over the putative father's petition, it likewise did not obtain jurisdiction

11

over the intervenors' counterclaim to terminate the putative father's parental rights to the child.[2]

Finally, we reject the intervenors' argument that the putative father waived any objection to the subject-matter jurisdiction of the juvenile court because he filed his petition there, inviting the juvenile court to exercise jurisdiction over the child, and because he did not challenge the jurisdiction of the juvenile court at any point in the underlying proceedings. "[T]he issue of subject-matter jurisdiction may not be waived, and it may be raised at any time, even for the first time on appeal or by an appellate court, ex mero motu." K.L., 394 So. 3d at 598. Furthermore, to the extent that the intervenors argue that the doctrine of judicial estoppel applies, we have held that "jurisdiction over the subject matter of a proceeding cannot be conferred by estoppel." Alves v. Board of Educ. for Guntersville, 922 So. 2d 129, 134 (Ala. Civ. App. 2005).

---

[2]Additionally, because the putative father was not validly adjudicated to be the legal father of the child, the juvenile court had no jurisdiction to terminate his parental rights. See J.R.C. v. Mobile Cnty. Dep't of Hum. Res., 342 So. 3d 580 (Ala. Civ. App. 2021).

In In re Nelson, 528 So. 2d 870 (Ala. Civ. App. 1988), this court said:

"[W]hile subject[-]matter jurisdiction must exist as a matter of law and may not be conferred by mere consent of the parties or by estoppel, if the jurisdiction of the trial court is invoked in the usual form and the subject matter is within the trial court's jurisdiction, and the trial court has proceeded to determine the controversy, the party invoking its jurisdiction will not be permitted to assume an inconsistent position thereon in the same proceedings or to question the regularity thereof either in the trial court or on appeal."

Id. at 871 (emphasis added). We conclude that, in this case, the jurisdiction of the juvenile court was not invoked in the usual form, i.e., by the filing of a petition alleging specific facts that, if proven to be true, would establish the dependency of the child,[3] so the putative father was

---

[3]Notably, Rule 12(A), Ala. R. Juv. P., requires a petitioner to allege facts establishing the subject-matter jurisdiction of the juvenile court, including the dependency of a child. Rule 12(B) requires a juvenile-court intake officer to review the petition to determine if it falls within the subject-matter jurisdiction of the juvenile court. If, upon preliminary inquiry, the juvenile-court intake officer determines that the petition is within the subject-matter jurisdiction of the juvenile court, it may then receive the petition and file it with the clerk of the juvenile court. Rule 12(C) and Rule 12(D). In this case, the juvenile-court intake officer should have rejected the putative father's petition because it did not allege specific facts showing the dependency of the child, and the juvenile court should have dismissed the petition for lack of subject-matter jurisdiction for the same reason. However, the erroneous decision of a juvenile-court intake officer to receive and file a petition and the erroneous decision of a juvenile court to retain jurisdiction over a petition does not foreclose this court from determining that a petition did not

not barred from asserting on appeal that the juvenile court lacked jurisdiction over his petition.

Conclusion

Because the putative father's petition failed to invoke the jurisdiction of the juvenile court, all proceedings in the juvenile court, including the entry of the December 31, 2024, judgment terminating the parental rights of the putative father and awarding custody of the child to the intervenors, are void. See G.W.K., 387 So. 3d at 1135. "A void judgment will not support an appeal." See Id. Accordingly, we dismiss the putative father's appeal as arising from a void judgment, albeit with instructions to the juvenile court to vacate the judgment. Id.

APPEAL DISMISSED WITH INSTRUCTIONS.

Edwards, Hanson, Fridy, and Bowden, JJ., concur.

---

properly invoke the jurisdiction of the juvenile court. See G.W.K. v. B.W.M., 387 So. 3d 1126 (Ala. Civ. App. 2023).